GEORGE T. MURRAY *vs.* CHARLES A. PILLSBURY *et al.*

Argued Oct. 26, 1894. Affirmed Nov. 12, 1894.

No. 8416.

**Contract construed.**

A certain contract construed, and *held* to be an agreement by the owner of grain giving the warehouseman authority to sell it as the agent of the owner, and not merely a contract for storage, except such temporary storage as is incident to receiving, shipping, and selling.

**Written control printed parts if in conflict.**

The rule applied that, where there is an inconsistency or conflict between the written and printed parts of a contract, the written part will control.

Appeal by plaintiff, George T. Murray, as executor of the will of Daniel Murray, Senior, deceased, from an order of the District Court of Hennepin County, *William Lochren*, J., made July 2, 1892, denying his motion for a new trial.

C. C. Wolcott & Co., graindealers at Minneapolis had a grain warehouse at Waterville, Le Sueur County, at which they stored grain and dealt in it. Daniel Murray, Jr., was their agent at that place. At various times between September 1, 1887, and March 12, 1888, Daniel Murray, Senior, a farmer, the father of this agent, delivered to them at this warehouse over 1,800 bushels of wheat. On the last named day he received from them a receipt or contract for the wheat, signed by his son the agent, of which a copy is set forth in the opinion. C. C. Wolcott & Co. had on February 27, 1888, shipped 1,309 bushels of this wheat to Minneapolis and had sold it to defendants, Charles A. Pillsbury, John S. Pillsbury and Fred C. Pillsbury, partners doing business under the firm name of Charles A. Pillsbury & Co. C. C. Wolcott & Co. received pay therefor, but did not disclose these facts or pay the money to Daniel Murray, Senior. He died testate September 14, 1890, and the plaintiff George T. Murray, another son received letters testamentary and is sole executor of his will. The executor demanded the wheat of defendants and being refused brought this action to recover its value. The Judge presiding at the trial construed the contract to be a sale of the wheat to C. C. Wolcott & Co. or an authority to them to sell the wheat and pay Daniel Murray, Senior, therefor Minneapolis prices less two cents a bushel and less freight on it to that market; saying:

There would be no sense in the *written* provision of the contract, if the wheat was to be sold by the owner. If the owner had the right, and nobody else had the right, to sell the wheat, it would be absolute nonsense to put any provision of that kind in an agreement for storage, for he could sell at what price he pleased and would have all advantages; for there is no agreement that he is to sell it and pay over to the owner of the elevator any sum for storage upon the sale of it. If the owner of the elevator had the power of disposing of this wheat, then it appears that it was sent from the warehouse to Minneapolis and was disposed of in some way, in the ordinary course of business to the defendants. I have therefore

come to the conclusion that the evidence will not support a verdict for the plaintiff.

The Judge then instructed the jury to return a verdict for defendants. The plaintiff excepted, moved for a new trial and being denied appeals.

*W. H. Adams* and *W. D. Abbott*, for appellant.

- In the absence of statute he, who delivers his grain at a warehouse to be mixed and stored with the grain of others of the same quality, parts with the title and has but a contract of the warehouseman for the delivery to him of the same amount of grain of like character and quality on demand and payment of charges. But Laws 1876, ch. 86 (1878 G. S. ch. 124, § 13,) changed this and gave the depositors the title to the grain in proportion to their deposits as tenants in common thereof. *Hall* v. *Pillsbury*, 43 Minn. 33. If these defendants acquired title to the wheat, they did so by virtue of the wheat ticket or contract given the testator by C. C. Wolcott & Co. The only question in this case and the only one upon which defendants can rely to sustain the verdict ordered below is, did the additional condition *written* into the ticket in question change the contract from that of a bailment to a sale absolute? We contend that it did not, and for the following reasons:

1st. That the contract was a bailment pure and simple and did not divest the owner of his title in the grain.

2nd. That the contract is lacking in every essential element that is necessary to constitute a sale.

3rd. That there was no agreement upon the part of the owner to sell.

4th. That there was no agreement upon the part of C. C. Wolcott & Co. to purchase the same, or to pay the owner of the grain or the holder of the ticket any sum or amount whatever.

5th. That the title and possession were not thereby delivered to C. C. Wolcott & Co. by the owner.

6th. That no agreement was thereby made on the part of C. C. Wolcott & Co. to pay over the proceeds of any sale made of the grain, and no obligation incurred by them to account to the owner for the proceeds of sale, when made.

7th. That it did not authorize C. C. Wolcott & Co. to sell the grain covered thereby.

8th. That it merely fixed the basis from which a price could be ascertained in case Murray should at any time actually sell the grain to C. C. Wolcott & Co., before withdrawing it from the warehouse, and could be given no greater force than as conferring an option on such owner to treat it as a bailment, or as a sale, which option could only be exercised by such owner. *O'Dell* v. *Leyda,* 46 Ohio St. 244; *Ledyard* v. *Hibbard,* 48 Mich. 421.

The court refused to permit plaintiff to reopen his case and introduce evidence to explain the indefinite and ambiguous portion of the storage contract and to show the real intention of the parties. This was error. *Empire State T. F. Co.* v. *Grant,* 114 N. Y. 40.

*Koon, Whelan & Bennett,* for respondents.

Part of the words in this contract are printed and part written. The printed words are those contained in an ordinary blank storage ticket used by warehousemen. But a portion of these printed words being those providing for the payment of storage are carefully erased and no provision for such payment is made. Other blank lines are left, not filled out in writing, so that the printed words clearly show that the parties did not intend to make an ordinary contract for the storage of grain. The written words are written across the face of the ticket and are as follows: "The holder of this ticket hereby agrees to accept Minneapolis prices, less freight, on the wheat from Waterville, Minn., to Minneapolis, Minn., and two cents per bushel when same is sold." These words relate to further acts and conduct of the parties with reference to the wheat after its receipt at the elevator, and they are the only words that do. Taken in connection with the erasure of the printed words, they become very significant in determining the mutual intention of the parties. Written portions of a contract prevail over printed, and courts will construe words most strongly against the party who used them. *Phœnix Ins. Co.* v. *Taylor,* 5 Minn. 492.

Nor is the sale of the wheat to be made to Wolcott & Co., and to no one else, as appellant contends. The promise of Murray is to

accept a certain price whenever the wheat is sold. If the sale must be made to Wolcott & Co., and to no one else, if made at all, their obligation to pay him the accepted price would be absolute, but his obligation to sell the wheat to them would be conditional and indefinite which, as Judge Lochren said, would be an absurd contract.

Applying to the words of the contract the elementary rules of construction, there is no ambiguity, and the mutual intention of the parties is clear. They did not intend a simple deposit of the wheat for the purpose of storage under a contract of bailment. They intended a sale of the wheat by Murray to C. C. Wolcott & Co., with an agreement on their part to pay the price provided for in the contract whenever they should sell the wheat again. Or they intended a grant of authority by Murray to C. C. Wolcott & Co. to make a sale of the wheat and to account at the rates provided for in the contract.

It was within the sound discretion of the court below to grant or refuse plaintiff's motion to reopen the case and introduce further evidence, and there was no abuse of that discretion. *McDonald* v. *Peacock*, 37 Minn. 512; *Plummer* v. *Mold*, 22 Minn. 15; *Crandall* v. *McIllrath*, 24 Minn. 127.

CANTY, J. The complaint alleges that plaintiff's testate, Daniel Murray, was the owner of certain wheat; that he stored the same in the warehouse of C. C. Wolcott & Co., who agreed to hold the same for him in storage, but who wrongfully, and without the consent of said Murray, sold and delivered 1,300 bushels of the same to defendants, who converted the same to their own use. On the trial, plaintiff proved the delivery of the wheat to Wolcott & Co., and gave evidence tending to prove that, at the time of such delivery, Wolcott & Co. gave Murray the wheat ticket or contract hereinafter set out, and that the wheat was shipped to Minneapolis, and sold by Wolcott & Co. to defendants. At the close of the testimony, the trial court ordered a verdict for defendants, and from an order denying his motion for a new trial plaintiff appeals.

The only question worthy of consideration is, what is the proper construction of said alleged receipt? which is as follows:

"C. C. Wolcott & Co., Elevator No. 553.

"Minneapolis, Minn., March 12th, 1888.

"Received in store of D. Murray eighteen hundred bushels of No. 1,800 wheat, which amount, kind, and grade of grain will be delivered to the holder of this receipt upon surrender thereof, subject to the following terms of storage:

"[First. For receiving, elevating, insuring, delivering, and fifteen days' storage, two and one-half cents per bushel.

"Second. Storage after the first fifteen days' are one-half cent per bushel for each fifteen days or part thereof, but shall not exceed five cents for six months.]

"Third. This grain is held by us at owner's risk of loss or damage by the elements, riot, heating, the act of God, or which may in any way have been caused by the act of the holder of this receipt.

"Fourth. If, for any reason, it shall become necessary to remove this grain, we reserve the right to deliver it from any other elevator or warehouse operated by us, subject to the same rate of freight to Duluth, St. Paul, or Minneapolis as the present tariff rate from this station.

"Fifth. Any grain of the previous crop remaining in store on and after July 1st will be held at owner's risk as to condition.

"Sixth. This grain is insured for the benefit of the owner. 1,800 bu. ———lbs.           By D. Murray, Agent.

"Subject to conditions on back."

The conditions on the back are as follows:

"If any of the wheat embraced in this ticket shall prove to be covered by any chattel mortgage or other lien, or the partial or absolute title prove to be in another than the party to whom this ticket is issued, the same shall, if discovered before the delivery herein mentioned, be a sufficient reason for a refusal to deliver to the holder of this ticket; or, if discovered after the delivery of such wheat, such delivery shall be deemed an overdelivery, for which the holder of this ticket, to whom the wheat is delivered, shall be accountable, and to this extent this ticket shall be nonnegotiable."

Written across the printed lines on the face of the ticket is the following:

"The holder of this ticket hereby agrees to accept the Minneapolis prices, less freight, on the wheat from Waterville, Minn., to Minneapolis, Minn., and two cents per bushel when same is sold."

The first and second divisions of the printed part of the face of the ticket, inclosed in brackets above, were erased by drawing lines through the printed lines.

It is contended by appellant that, when properly construed, this wheat ticket is merely a contract for storage, which fixes the price at which Wolcott & Co. shall buy the grain if Murray at any time elected to sell. It is contended by respondents, that it is either a sale of the wheat to Wolcott & Co., or authority to them to sell the wheat, as the agents of Murray.

We are of the opinion that the latter is the proper construction of the instrument,—that its intent is to give Wolcott & Co. authority, as the agents of Murray, to sell the grain. If, as contended by appellant, it was a contract for storage, giving Murray the option to sell to Wolcott & Co. when he saw fit, all the provisions fixing both the long and short rates of storage would not have been stricken out, leaving the contract wholly silent as to rates of storage. This erasure indicates an intention to charge no storage, and such construction would give Murray the right to leave the grain in store as long as he saw fit, and pay nothing for storage; and, if he did not see fit to exercise his option to sell to Wolcott & Co., he could otherwise dispose of the grain, and Wolcott & Co. would get no compensation, either directly or indirectly, for the storage of the grain, and no benefit whatever from it. We cannot hold that this was the intention of the parties.

It is a well-settled rule of construction that the written part of a contract prevails over the printed part. Then, if there is any inconsistency between the printed and written parts of this instrument, the written part must control. By the written part of the contract, Murray agreed to accept Minneapolis prices, deducting freight and two cents per bushel, when the wheat was sold. It seems to us that no storage was contemplated except the temporary storage incident to receiving and shipping to the Minneapolis market, where the grain was to be sold by Wolcott & Co. for Murray. The printed provisions not erased out of the contract, and relating to storage, such as that

the grain is held at owner's risk, must be construed to relate to this temporary storage. If Murray gave Wolcott & Co. authority to sell this grain, the purchaser from them, under this authority, is the owner of the grain, and an action for conversion will not lie against him.

The trial court did not err in refusing, after the testimony was closed, to reopen the case for the purposes of permitting plaintiff to introduce oral evidence to vary or contradict the written contract. Even if such evidence was competent, the application would be adressed to the discretion of the court.

The order appealed from should be affirmed. So ordered.

GILFILLAN, C. J., took no part.

(Opinion published 60 N. W. 844.)