AMES & FROST COMPANY v. ERNEST F. SMITH and Another.[1]

June 26, 1896.

Nos. 9939—(198).

**Action on Note—Proof of Ownership.**

The possession of a promissory note by the payee with his own indorsement in blank thereon is prima facie evidence of his ownership of it.

**Sale—Contract by Letter.**

To establish a contract for the sale of property by the letters of the parties, it must appear that there was a clear accession on both sides to one and the same set of terms. The evidence herein considered, and *held*, that it does not establish a contract between the parties within this rule.

Appeal by defendants from a judgment of the district court for Hennepin county, in favor of plaintiff for $1,003.38, entered in pursuance of the findings and order of Russell, J. Affirmed.

*Henry M. Farnam*, for appellants

*Haynes & Chase* and *Bangs, Wood & Bangs*, for respondent.

START, C. J. The complaint in this case stated two causes of action; one upon a promissory note, the other for a balance alleged to be due on account. The latter was adjusted on the trial.

[1] Reported in 67 N. W. 999.

As to the note, the complaint alleged that the defendants, at the time stated, made and delivered to the plaintiff their promissory note, and thereby promised to pay to the order of the plaintiff $500 in four months, with interest. The answer admitted the making and delivery of the note, but as to whether the plaintiff was, at the commencement of the action, the owner of the note, the defendants had no knowledge or information sufficient to form a belief. As a counterclaim the answer alleged that the parties hereto entered into a contract in writing, whereby the plaintiff agreed to sell and the defendants to buy 200 bicycles, at an agreed price for each, for the trade of the defendants during the then coming season; that the plaintiff refused to perform its part of the contract, whereby the defendants were damaged in the sum of $2,500. The making of the contract was denied by the reply. The trial court found for the plaintiff the amount claimed in the complaint, but did not make any finding as to the contract set up in the defendants' answer. The defendants then moved the court to make additional findings to the effect that the contract alleged in the answer was made, that there was a breach thereof, and that the defendants sustained damages as claimed; which were refused. The defendants appeal from the judgment.

There are 23 assignments of error, but they are properly classified by counsel as relating to the ownership of the note, the existence of the contract, and the defendants' damages for a breach thereof.

1. The plaintiff on the trial produced and offered the note in evidence, which appeared to have been indorsed in blank by the payee. The plaintiff also unnecessarily offered oral evidence tending to show that it was the owner of the note. The point is made that the plaintiff was not shown to have been the owner of the note, for the reason that the oral evidence was incompetent. It is of no consequence whether the oral evidence was competent or not, for there was no issue as to the ownership of the note under the pleadings; and, further, if there had been, the production of the note on the trial, indorsed in blank by the payee, was sufficient proof of plaintiff's ownership. The rule is that a bill or note payable to bearer or indorsed in blank by the payee may be transferred, like currency, by delivery, and possession is prima facie evidence of ownership. Randolph, Com. Paper, §§ 777, 1645.

2. The defendants did not move the trial court to make additional findings as to the issues tendered by the counterclaim in their answer. Their motion was, as we have suggested, that the court find that the contract alleged in the answer was made by the parties hereto; therefore the denial of the motion was tantamount to a decision that the supposed contract was never made. Hence the question here is not whether there was evidence in the case which would have justified a finding that such a contract was made, but whether the evidence required such a finding as a matter of law. The evidence relied on by defendants to establish the contract consists of the correspondence between the parties, containing propositions, and qualified acceptances thereof. To establish a contract for the sale of property by the correspondence of the parties it must appear that there was a clear accession on both sides to one and the same set of terms. An offer to sell does not become a contract unless unconditionally accepted upon the exact terms of the offer. The acceptance must be unqualified without the suggestion of any new terms. Lanz v. McLaughlin, 14 Minn. 55, (72); Hamlin v. Wistar, 31 Minn. 418, 18 N. W. 145; Langellier v. Schaefer, 36 Minn. 361, 31 N. W. 690. Tested by this rule, it is reasonably clear that the correspondence fails to establish the contract alleged in the answer, for it appears that in one material particular at least the minds of the parties never met.

On December 13, 1894, the plaintiff, whose place of business was at Chicago, wrote the defendants at Minneapolis that if they would order 100 or 200 wheels, to be taken through the season of 1895, it would, for an order as above stated, make a net price for the wheels of $42.50 each; terms net, 60 days from the first of each month following the sale. December 17 defendants answered, and, without accepting the proposition, asked for exclusive sale of the wheel in Minnesota and North Dakota. December 20 plaintiff answered that it could not give right to exclusive sale. December 21 defendants replied, saying they would accept the proposition with the understanding that such wheels as they should want at any time before April 1 should be billed as of that date. December 22 plaintiff replied, saying: "We are pleased to have you accept our proposition on the Special wheel, and we wish you would kindly mail us an order for from 100 to 200 wheels," and, further, that the defendants' proposition as to billing wheels wanted prior to April 1 as of that date was not satisfactory,

but the plaintiff offered to bill them as of March 1; that samples could be sent at once. December 29 the defendants answered, saying:

"Would be very much pleased to have you ship us immediately samples of your Special wheel. Send us two each of the lady's and gentleman's wheels, all with wood rims; two with Morgan & Wright, and two with Dunlop, tires (the gentleman's wheels to be with Dunlop tires). You did not answer our question in letter of recent date as to whether a lower quotation had been quoted on this Special wheel to the competitors we are to meet in this territory. We presume that such is not the case, but want an assurance from you to that effect. Also wish it understood that the fact that we are buying this Special wheel of you is to be kept confidential, and that our competitors are not to know from you that such is the case."

On January 5, 1895, the plaintiff answered, saying that order for sample wheels had been entered, and they would be shipped at once, and that they had quoted the lowest possible price on the wheels.

No further communications passed between the parties until January 11, when one of the defendants, Mr. Zimmer, was in Chicago, and met a Mr. State, an employé and stockholder of the plaintiff, whose duties were to attend to correspondence, make prices, appoint agents, and do work of that kind, who then informed him that the plaintiff could not furnish the wheels to the defendants, as it had made a contract with another party. Thereupon Zimmer replied that the defendants would insist on having the wheels in accordance with the agreement. The next day he saw Mr. Ames, the president of the plaintiff, and told him that the defendants must have the wheels in accordance with the contract, and requested that all wheels called for by the contract should be forwarded to the defendants. Ames replied they could not furnish the wheels, because they had made an agreement with another party.

Comment on this evidence is unnecessary. It falls short of establishing a contract, for the minds of the parties never met on the proposition whether sales prior to April 1 were to be billed on that date or March 1, or as to how many wheels the defendants would order. The defendants' counsel claims that Zimmer's request of Ames for the wheels according to the contract was an acceptance of the plaintiff's offer, and an order for the wheels before it was withdrawn, for the reason that State was not authorized to withdraw the offer. He appears to have been, in any event. The plaintiff is not questioning his

authority. But it is immaterial whether he was or not, for the request to Ames to forward the wheels according to the contract, and that the defendants would insist on their contract, amounts to no more than a claim that the parties had already made a contract. It was not an acceptance of any of the propositions of the defendants. When the correspondence closed, there was no contract, and certainly none was made afterwards when the parties met in Chicago. The minds of the parties were very far from meeting on that occasion. The defendants claim that in any event they are entitled to damages for the nondelivery of the four sample wheels. If there was any obligation on the part of the plaintiff to deliver them, this is not the contract alleged in answer, which the trial court was asked to find upon.

Judgment affirmed.