D. S. WEMPLE v. NORTHERN DAKOTA ELEVATOR COMPANY.[1]

December 28, 1896.

Nos. 10,319—(168).

**Action on Contract—Evidence.**

The complaint herein alleged that the plaintiff sold and delivered, at French in this state, to the defendant, a quantity of wheat, for which it agreed to pay, at any future time when demanded, the then market price of wheat of the same grade at Duluth or Minneapolis, less 13 cents per bushel. *Held*, that certain correspondence between the parties did not establish such contract. *Held*, further, that the trial court did not err in dismissing the action on the ground that plaintiff failed to prove such contract.

Appeal by plaintiff from an order of the district court for Hennepin county, Elliott, J., denying a motion for a new trial. Affirmed.

*Geo. D. Emery* and *Houpt & Baxter*, for appellant.

The letters constituting the actual contract upon which the wheat was delivered impliedly assent to plaintiff's assertion that he would not pay storage, and avoid any mention of storage charge on the part of defendant. It was so understood by plaintiff when he delivered the wheat, and could not subsequently be changed by any printed contract tendered him by defendant. The delivery of the printed storage receipts, after the contract made by the letters had been executed by plaintiff, was ineffectual to change the actual agreement. C. Aultman & Co. v. Kennedy, 33 Minn. 339, 23 N. W. 528. The acceptance of the tickets under the representations of the agent did not operate to change the contract. The question whether this was the real contract between the parties was for the jury.

*Wilson & Van Derlip*, for respondent.

START, C. J. The complaint in this action alleged that on September 2, 1891, the plaintiff sold and delivered to the defendant 3,340 bushels of wheat, upon the express agreement that the wheat should be delivered into the defendant's elevator at French, in the county of Otter Tail, and that the defendant should pay the plaintiff therefor,

[1] Reported in 69 N. W. 478.

at any time when demanded, the market price of the same grade of wheat on the day of the demand in either of the cities of Minneapolis or Duluth, less 13 cents per bushel, and that the wheat, when so delivered, should be the property of the defendant; that the wheat was delivered, pursuant to this contract, on September 2, 1891, and the payment of the purchase price demanded August 1, 1895, which was refused. The answer denied that the defendant ever purchased the wheat on any terms, and alleged that the defendant received the wheat into its elevator for storage, and issued to the plaintiff the usual storage receipts, stating on their face the scale of insurance, storage, elevator, and delivery charges on the wheat, which tickets were accepted and retained by the plaintiff. The reply admits the delivery of the receipts to plaintiff, but denies that they constituted any part of the contract of the parties.

On the trial, at the close of the plaintiff's case, the trial court dismissed the action, for the reason that the plaintiff had not proven the cause of action alleged in his complaint. He appealed from an order denying his motion for a new trial.

The real question in this case is, was the evidence, including that which was stricken out by the trial court, sufficient to justify a finding by the jury that the plaintiff sold and delivered the wheat to the defendant pursuant to the special contract alleged in the complaint? The evidence tended to show the following facts: The plaintiff's brother, D. D. Wemple, had charge of the defendant's elevator at French, with authority to buy wheat or receive it in store for the defendant. If he purchased wheat, he issued a cash ticket for it. If he received it in store, he issued a storage ticket or receipt for it, stating the terms of the bailment. The prices to be paid and the terms of storage were determined by the defendant, and its agent Wemple had no authority to make any change in the usual tickets, or vary the price to be paid from the price list furnished by the defendant more than one or two cents per bushel.

On August 16, 1891, D. D. Wemple wrote the defendant's general manager at Minneapolis for the best terms on which the defendant would handle his brother's (the plaintiff's) wheat. The defendant answered, August 17, in substance, that if the plaintiff would deliver from 2,000 to 4,000 bushels of wheat, it would allow him 13 cents off Duluth or Minneapolis cash price any day he wished to sell after the

wheat was delivered into the elevator. If he accepted the offer, the agent was to wire for cash prices when plaintiff was ready to sell, or issue tickets at list price, and get check for difference later. On August 18 the plaintiff himself wrote to the defendant, asking on what terms he could dispose of his wheat to the defendant, without storage, and with the right to take the price when he got ready to sell, and further stating that he would not pay any storage. The defendant's general manager, on August 19, in answer, sent to the plaintiff the following letter:

"I am in receipt of your favor of the 18th inst., and note contents. In reply, will say we would like very much to handle your wheat, but cannot afford to do it on any better terms than 13 c. off either Duluth or Minneapolis cash price day of sale. It costs us 2 cts. per bushel to handle at the elevator, and 1 ct. per bushel to cover expense at the terminal point, and at the price we have agreed to handle for you, it leaves us about 1 ct. to guaranty weight and grade. We will handle it through the house for you; that is, putting it in special bin, receiving, and delivering on board car, for 2 c. per bushel, not guarantying either weight or grade."

He also at the same time forwarded to the agent at French the following letter:

"I am in receipt of a letter, under date of 18th inst., from your brother in reference to his crop. We cannot afford to handle it for less than 13 c. off either Duluth or Minneapolis cash price any day he wishes to sell after wheat is delivered in our elevator. We will handle it, however, for 2 cts. per bushel; that is, receiving and putting it on board car, not guarantying either weight or grade. These are the best terms we can offer."

There was no evidence tending to show that the plaintiff ever accepted either of the propositions made by defendant in these letters. There was no further communication between the parties as to the defendant's handling or purchasing the plaintiff's wheat, except the conversation hereinafter referred to between the brothers. The plaintiff was advised as to the contents of the two letters from the defendant to its agent at French at the time he delivered the wheat. The wheat was delivered into the elevator, and memorandum receipts given for it, until all was delivered, when the agent made out and delivered to the plaintiff the usual storage tickets of the purport stated in the answer. The plaintiff objected to the tickets, claiming that he had not put his wheat into the elevator for storage, but under an

agreement that he was to have the market price at Duluth or Minneapolis, less 13 cents, on the day of sale, and pay no storage. The agent assured him that such was the case, and that the provision for storage in the receipts cut no figure, as the letters showed the agreement. The letters from the defendant to the agent were exhibited to the plaintiff, who thereupon accepted the receipts containing a contract for the payment of storage at the rate therein named. The plaintiff subsequently borrowed money at the bank, and pledged the receipts as collateral security.

There is no evidence in the case that there was any communication between the parties hereto with reference to the wheat or the receipts from the time the latter were accepted until August 1, 1895, some 3 years and 11 months after their delivery, when the plaintiff demanded of the defendant the market price of wheat of similar grade in Minneapolis on that day, less 13 cents per bushel, but refused to pay or allow anything to be deducted for the storage of the wheat. There is no evidence or claim that the plaintiff did not know the extent of the authority of the agent, his brother, in the premises. On the contrary, the fact that the plaintiff knew that the agent wrote to the defendant for the terms on which it would handle the wheat, and that the letters in the reply were exhibited to the plaintiff, indicates that he knew the extent of his brother's authority. There is no claim of any fraud or deception on the part of the agent.

The plaintiff's claim is that the correspondence between the parties constituted their contract, and establishes the contract sued on. Clearly, such was not the case. The letter of August 19 from the defendant's general manager, which we have quoted in full, distinctly states that the defendant cannot afford to handle the wheat on any better terms than those therein offered. It is also manifest, on the face of the letter, that free storage of the grain for 3 years and 11 months, or for any other considerable time, was not included in the offer.

But, this aside, the letter contained two independent propositions as to the terms upon which the defendant would handle the wheat. The plaintiff accepted neither. Nor was there in the correspondence any accession by both parties to one and the same set of terms, without which there could be no contract. Ames & Frost Co. v. Smith, 65 Minn. 304, 67 N. W. 999. The case of Murray v. Pillsbury, 59 Minn.

85, 60 N. W. 844, relied on by plaintiff is not in point.   In that case the agreement to sell was written across the face of the receipts.   The evidence shows no contract between the parties concerning the handling of the wheat prior to the delivery of the storage tickets or receipts.

It is claimed by plaintiff that the statement of the agent at the time these receipts were delivered, with the previous correspondence, controlled or abrogated the contract in the receipts for the payment of storage.   Nothing can be claimed from the statement or opinion expressed by the agent at the time the receipts were delivered, for he was only authorized to receive the grain for storage or buy it, and issue either storage tickets or cash tickets as the case might be. He was not the defendant's agent to advise the plaintiff as to the legal effect of the letters, or of accepting storage receipts, in view of the previous correspondence of the parties.

The plaintiff having offered no evidence which would justify a finding by the jury that the defendant purchased his wheat, as alleged in his complaint, it follows that the trial court rightly dismissed the action, and that the order appealed from must be affirmed.

So ordered.

CANTY, J.   It does not seem to me that the fact of the issuing of the storage ticket is necessarily inconsistent with the idea of an acceptance of the contract giving plaintiff an option to sell the wheat on any day he should elect.   Both contracts might stand together, the storage tickets supplying what the other contract omitted, or, possibly, implied,—an agreement to pay storage in the meantime. But plaintiff's contract, giving him an option to sell his wheat on any day on the terms provided, must, if any such contract was made, be read with reference to the course of business.   He should have exercised his option within a reasonable time.   He failed to do so, and could not exercise it at so late a time as August 1, 1895, four years after the option is claimed to have been given.   I therefore concur in the result.