## GUSTAVE A. KULL v. ANNIE L. WILSON AND ANOTHER.[1]

### June 1, 1917.

### Nos. 20,416—(192).

**Vendor and purchaser — offer and acceptance by letter.**

1. To establish a contract for the sale of real property by correspondence, there must be a definite offer in writing and an unqualified acceptance of the offer in writing.

**Same — modified acceptance — specific performance.**

2. To entitle a party to specific performance of a contract to convey real property, the contract must be clearly proved. An acceptance upon terms varying from those offered is a rejection of the offer.

**Same — withdrawal of offer.**

3. A party making an offer to sell real property may, in the absence of an unqualified acceptance of the offer, withdraw it and terminate the negotiations.

Action in the district court for Dodge county to enforce specific performance of a land contract. The answer admitted the receipt and mailing of certain letters and denied the other allegations of the complaint. The case was tried upon stipulated facts before Childress, J., who made findings and ordered judgment in favor of defendants. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Sutton, McKenzie, Cox & Harris, C. O. Stauffer* and *H. J. Edison,* for appellant.

*S. R. Child* and *Brooks & Jamison,* for respondents.

QUINN, J.

Action to enforce specific performance of an alleged contract for the sale of real estate. The question was submitted to the trial court upon an agreed statement of facts. The court made findings upon which judgment was entered in favor of defendants, from which judgment plaintiff appealed.

[1]Reported in 162 N. W. 1072.

Plaintiff is a resident of the state of Nebraska. Defendants are husband and wife and reside in the state of California. Defendant Annie L. Wilson, who will be hereinafter referred to as defendant, owned a tract of land containing 800 acres, located in Dodge county in this state.

Plaintiff alleges in his complaint that in April, 1916, he entered into a contract with defendant for the purchase of the 800-acre tract, and that such contract consisted wholly of correspondence with defendant by letter. The complaint contains copies of such correspondence, the substance of which is herein set forth.

On March 25, 1916, plaintiff wrote defendant a letter saying that if she wanted to sell her 800-acre farm and would make a good price on it, he would buy it.

April 4 defendant replied: "I will sell the 800 acres for $36,000. It must all be sold together. I want $9,000 down and the balance can run five years at 5 per cent interest."

April 10 plaintiff answered: "I will give you $30,000.00 for your 800 acres, $9,000 or $10,000 cash and the balance on or before 10 years at 5 per cent interest, payable annually, and I am inclosing contracts in duplicate to this effect, so that in case you decide to sell to me it will save time, as I must know right away. I am inclosing a certified check for $1,000.00 to show good faith, and will pay the balance as soon as abstract showing clear title is furnished."

The contract referred to in this letter was not signed and contained the provision that the vendor "will give possession by May 1st, 1916."

April 15 defendant replied: "I will accept your offer * * * but I cannot give you possession May 1st, 1916. I have a verbal contract with my tenant until October 1st, 1916. * * * I want the note made payable at Kasson, Minnesota. * * * My husband and myself will execute a warranty deed to the 800 acres, and I will send it to Mr. W. S. Willyard, cashier of the National Bank of Dodge County, at Kasson, Minnesota, with instructions to him to send it to you, upon receipt of a bank draft for $9,000, * * * a mortgage properly executed by you and your wife, made payable on or before ten years, payable to Annie L. Wilson, also a note for $20,000 at 5 per cent interest, made payable to Annie L. Wilson. I will have to pay for the revenue stamps on the

deed and the tax on the land. * * * You will have to pay for the revenue stamps on the note and mortgage tax. You of course know there is a tax for the ditch that has been put in. I think it is all paid except a couple of years' tax. * * * I am not returning the agreement that you sent, until I hear from you, as you have May 1st, 1916, as the date of possession * * * As soon as I hear from you to know if you are satisfied with the date of possession I will fill in the October 1st, 1916, and return to you one of the copies signed by me."

April 20 plaintiff answered: "In regard to the contract you have with your tenant which you say expires Oct. 1st, 1916, will say that all I ask is that you instruct your tenant to give us the right to go onto the farm and work and tile, as we want to get the farm tiled out just as fast as possible, and would like to start about July. * * * You say something about a ditch tax. This I know nothing about, as I was told that all the ditch tax had been paid by you, and in the contract it so states that all taxes and public rates must be paid, as I cannot afford to assume any ditch taxes. * * * I accept all requirements of your letter except the ditch tax, if there is any. I will expect you to pay them, and as soon as we get the abstract, and find it to be all right and showing good title, we are ready to sign mortgage and notes if you will have same made and sent to the Farmers and Merchants National Bank here at Oakland, Neb. * * * and then they will be sent to your order, and the draft for $9,000.00 will be sent to your order, as per agreement. Please sign the contracts and send the one to me, and also write a letter with same stating that we have the right to go onto said farm for the purpose of improving same both as to tiling and repairing buildings, if we so see fit, about July 1st, 1916, but that your tenant is to have possession until October 1st, 1916."

Two days later, April 22, defendant again wrote plaintiff: "In my haste the 20th, I neglected to state that Mr. Charles A. Fisk is buying this land with me, and in making out the deed make it to Gustave A. Kull and Charles A. Fisk, and the mortgages we would like to have made as follows:

$8000 or $9000 on the S½ of 29-106-18
$8000 or $9000 on the N½ of 32-106-18
and $2000 or $4000 on the NE¼ of 31-106-18

"You will note that I have made two figures as I do not know just how you want to divide the mortgages only that you want $20,000.00 and we will want the mortgages divided as above, it will not make any difference to you and it will help us in case we should want to sell off part after getting it fixed up."

April 26 defendant replied: "I am in receipt of your letter of the 20th and also the 22nd. As to putting three mortgages on the land; no, I will not do that, as I wrote you I would take a mortgage for $20,000.00 on the entire 800 acres. I have written to Minnesota to find out about the ditch tax, and should you decide to stand by your first agreement, I will sign one of the contracts and send to you as soon as I hear about the tax."

Two days later, April 28, defendant again wrote plaintiff:

"Dear Sir: Enclosed find your contracts. Please consider all negotiations at an end. Inclosed find draft you sent.

.          "Respectfully yours,
                    "Annie L. Wilson."

May 4 plaintiff wrote acknowledging receipt of the contracts and check and further saying: "Please sign these contracts as per agreement and as per your acceptance of April 15th. * * * I am going to carry out my part of the contract and will expect you to do your part and fulfil the agreement according to contract and correspondence."

May 15 defendant replied: "Your favor of the 4th inst. returning contract and certified check and demanding that I execute the agreement under the alleged acceptance of April 15th, is received. In answer I will say that, before the acceptance by you of my offer, I withdrew the offer as I am advised I have a right to do, and announced that said contract was at an end. I therefore return you herewith your copy of the contract unsigned, also the certified check for $1,000.00."

It is clear that at the time plaintiff received defendant's letter of April 28 there had been no completed contract between the parties and this letter terminated the negotiations. The time when possession was to be given remained undetermined, whether there was to be one or two purchasers was open, who should pay the ditch tax was undecided, whether the $9,000 was to be paid before or after the giving of the

deed was still an open question, nor had it been agreed whether there should be one or three mortgages given. To establish a contract for the sale of real property by correspondence, there must a definite offer in writing and an unconditional and unqualified written acceptance of the offer. Ames & Frost Co. v. Smith, 65 Minn. 304, 67 N. W. 999; Minneapolis & St. L. Ry. v. Columbus Rolling Mill, 119 U. S. 149, 7 Sup. Ct. 168, 30 L. ed. 376; Hamlin v. Wistar, 31 Minn. 418, 18 N. W. 145; Lanz v. McLaughlin, 14 Minn. 55 (72). No contract of this character "is complete without the mutual assent of the parties thereto, and an offer to sell property imposes no obligation until it is accepted according to the terms of the offer. A proposal to accept, or an acceptance upon terms varying from those offered, is a rejection of the offer and puts an end to the negotiations, unless the party who made the original offer renews it, or properly assents to the modification suggested." Kileen v. Kennedy, 90 Minn. 414, 97 N. W. 126.

There being no contract, it becomes unnecessary to consider whether the husband joined in the negotiations, as suggested by counsel for defendant.

Judgment affirmed.