# NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY v. MANNHEIMER REALTY COMPANY.[1]

March 31, 1933.

No. 29,175.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *George W. Jansen,* for appellant.

*Tryon & Everett* and *George Maloney,* for respondent.

STONE, JUSTICE.

Plaintiff, proceeding by advertisement, foreclosed a $175,000 mortgage on real estate belonging to defendant in St. Paul. The sale was had July 8, 1931. The purpose of this action is to recover an admitted deficiency. The trial resulted in the direction of a verdict for plaintiff. Defendant appeals from the order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

[1]Reported in 247 N. W. 803.

512

The only defense pleaded was an alleged contract between plaintiff and defendant, the date of which is fixed by the answer "on or about the 27th day of December, 1930," whereby plaintiff waived its right to judgment for any deficiency in consideration of defendant's undertaking: (1) Forthwith to convey the mortgaged property to plaintiff by deed; (2) deliver the possession as of January 1, 1931; and (3) refrain from interfering in any manner with the foreclosure proceedings of plaintiff.

■ The record makes it clear that no such contract was ever entered into. None is now claimed to have been made in December, 1930, as alleged in the answer. Negotiations were pending, conducted for plaintiff by Mr. Lagerman of St. Paul. The evidence is plain, notwithstanding that much of it comes from counsel in the case, some on one side and some on the other. For plaintiff, Mr. Lagerman was authorized to offer, and did offer, to forego the right to a deficiency judgment if the property were promptly conveyed to plaintiff. From the first he insisted that plaintiff should get the rents accruing after January 1, 1931, and also an unconditional assignment of the insurance policies then on the property (held with the mortgage as part of the security) without any credit to defendant for the then unearned premiums. Plaintiff's offer, so conditioned, was not accepted promptly, or at all. On the contrary, it was rejected, because for defendant the answer was, instead of unconditional acceptance, a stipulation for an offset of the unearned insurance premiums against the accrued and collected rentals, upwards of $600.

If perchance it should be considered that Mr. Lagerman, notwithstanding its initial rejection, was still keeping his offer open, it could be withdrawn at any time before acceptance. It was so withdrawn. There is testimony by Mr. Evans, of counsel and a witness for plaintiff, that as late as April 29, 1931, he was in conference, negotiating with Mr. Lagerman, and then told the latter he did not have the check for the accrued rentals "because Mr. Goodkind [for defendant] wants to know if some of the unearned premiums could not be set up for that amount. He is ready to write a

check but wants to know if he can't get the benefit of some of the insurance. * * * I said, 'Very well, I will have to talk to him again,' * * * and I went back to see Mr. Lagerman and I said, 'We are still willing to give the check, but we want to know if we could offset just that part of the premium after a year, which would act the same as a year of redemption,' and Mr. Lagerman said, 'Well, I have talked it all over with Mr. Tryon, and it is out of my hands.'" (Mr. Tryon, of the Minneapolis bar, was then under instruction to proceed with the foreclosure.) The offer was open to revocation and was revoked by Mr. Lagerman in his last conference with Mr. Evans. The testimony of the latter puts that beyond question. Whatever was thereafter attempted by defendant in the way of acceptance was irrelevant. It could not convert the revoked offer into a contract by attempted acceptance, however unconditional. Lewis v. Johnson, 123 Minn. 409, 143 N. W. 1127, L. R. A. 1915D, 150.

■ Thus clearly appears the justification for the view of the learned trial judge. He held that the transaction remained in a state of negotiation and so had never ripened into a contract. No other conclusion is tenable. Not meeting of the minds but expression of mutual and final assent is the operation that completes the making of a contract. Am. L. Inst. Restatement Law of Contracts, §§ 20, 21; Brown County Bank v. Hage, 156 Minn. 460, 195 N. W. 275; Everson v. De Schepper, 157 Minn. 257, 195 N. W. 927. When Mr. Lagerman for plaintiff notified Mr. Evans for defendant that plaintiff's offer was withdrawn (that was the effect of telling him that the matter was out of his hands and in those of Mr. Tryon), there had been no agreement, no mutual assent to plaintiff's demand for absolute assignment of the insurance policies without credit to defendant for premiums unearned as of January 1, 1931. There is no contract where there is no mutual and final assent to all the essential terms of a bargain. Such assent lacking, as it is here, to some of such terms, there is no contract. Wells Construction Co. v. Goder Incinerator Co. 173 Minn. 200, 217 N. W. 112.

On the merits, the direction of a verdict for plaintiff was inescapable as matter of law.

Order affirmed.

514

HILTON, JUSTICE (dissenting).

I dissent. If all the undisputed essential facts are stated in the majority opinion there can be no question as to the correctness of the result reached. I am, however, constrained to the view that there were disputed fact issues that should have been, under proper instructions, submitted to the jury for determination. Among these are: Was there an offer made by one of the parties to the other? Who made the offer, and what was it? Was there an acceptance by the other? Was there a contract entered into? The answer as amended pleaded a contract as having been entered into "on or about the 27th day of December, 1930, and by subsequent negotiations." Much oral evidence was given. There is considerable conflict therein. Whether under all the circumstances there was a sufficient tender of performance by defendant; whether the delay was unreasonable or was acquiesced in by plaintiff; whether the refusal on the part of plaintiff to perform was justified—all depend on what the facts were. Something more than a question of law was involved.