## SARAH A. YOUNG v. ST. PAUL PUBLISHERS, INC. AND OTHERS.[1]

May 23, 1941.

No. 32,727.

*Patrick J. Ryan,* for appellant.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for respondents.

GALLAGHER, CHIEF JUSTICE.

Plaintiff, a minority stockholder in St. Paul Publishers, Inc., sued the corporation and the controlling stockholders on what she claims to be an express contract to pay to her a fixed amount out of the proceeds from the sale of the assets of the corporation. The trial court granted defendants' motion to dismiss for failure to

[1]Reported in 298 N. W. 251.

prove the contract. Plaintiff appeals from an order denying her motion for a new trial.

Prior to the events here involved the Dispatch Printing Company owned the newspapers known as the *St. Paul Dispatch* and the *St. Paul Pioneer Press*. About October 1, 1927, by amendment of its articles, the name of the corporation was changed to "St. Paul Publishers, Inc." At that time the corporation had outstanding 30,000 shares of capital stock, of which plaintiff owned 900 shares. Defendants Blandin and the Blandin Development Company owned 28,600 shares. Blandin owned all the stock of the development company and was president of and had active control of both corporations.

During the summer of 1927, negotiations were had for the sale of the newspapers to Ridder Bros. of New York and Leo Owens of St. Paul. Pending these negotiations and on August 3, 1927, Blandin wrote plaintiff, who was then in New York, advising her of the proposed sale and the approximate terms thereof and urging her to consent thereto. On September 30, 1927, plaintiff gave to Blandin a proxy or power of attorney authorizing him to vote her stock at any and all meetings of the corporation to be held in September and October, 1927, for the purpose of carrying into effect the contracts for the sale of substantially all of the assets of the Dispatch Printing Company.

On August 3, 1927, a sale was consummated whereby the purchasers paid approximately $5,000,000 for the assets of the corporation. The sum of $4,500,000 was paid in cash and $500,000 in par value of preferred stock of the purchasing corporation. From time to time after the sale and until September 23, 1939, distributions out of the proceeds, including those derived from a redemption of the preferred stock, were made to the stockholders. Plaintiff received in all approximately $98,000. In the meantime, all taxes and other obligations of the corporation were adjusted. It appears that during the course of liquidation some of the money was invested by the corporation in securities which depreciated in

value, with the result that the stockholders could not be paid in cash the full amount realized from the sale.

It is plaintiff's claim that defendants agreed with her that the newspapers would be sold for a stated amount and that the proceeds would be distributed in the form received, less only such part thereof as would be necessary to pay taxes and the expenses of liquidation; that her share of the proceeds amounts to 900/30,000 of the balance or approximately $150,000; that she has received only $98,000 and is entitled to the remaining sum. She predicates her right to recover on the admitted allegations in the pleadings and on certain correspondence between the parties. Her counsel states her position thus:

"It is our contention that the letter of August 3, 1927, with plaintiff's response, and the letter of February 15, 1928, hereinafter described, with plaintiff's response, constituted an agreement between plaintiff and defendants, that the newspapers would be sold for the stated amount of money and stock, that the proceeds would be distributed in the form received, less only such part thereof as would be necessary to pay taxes and the expenses of liquidation. Otherwise stated, there was an agreement to declare a dividend of the proceeds of the sale of the papers, less taxes arising out of the sale."

The only question in the case is whether the correspondence relied upon by plaintiff, aided by the admitted allegations in the pleadings, is sufficient to prove the contract upon which her cause of action is based. Plaintiff concedes that her action is upon an express contract. An expression of mutual and final assent is the operation that completes the making of a contract. Restatement, Contracts, §§ 20, 21; Brown County Bank v. Hage, 156 Minn. 460, 195 N. W. 275; Everson v. De Schepper, 157 Minn. 257, 195 N. W. 927; New England Mut. L. Ins. Co. v. Mannheimer Realty Co. 188 Minn. 511, 247 N. W. 803. There must be an offer and an acceptance and a clear accession on both sides to one and the same set of terms. Ames & Frost Co. v. Smith, 65 Minn. 304, 67

N. W. 999; Wemple v. Northern Dakota Elev. Co. 67 Minn. 87, 69 N. W. 478; Brearley v. Schoening, 168 Minn. 447, 210 N. W. 588; New England Mut. L. Ins. Co. v. Mannheimer Realty Co. 188 Minn. 511, 247 N. W. 803. If an offer is so indefinite as to make it impossible for a court to decide just what it means and to fix exactly the legal liabilities of the parties, its acceptance cannot result in an enforceable contract. 17 C. J. S., Contracts, § 36, p. 365.

On August 3, 1927, defendant Blandin wired plaintiff as follows:

"HAVE OPPORTUNITY TO SELL NEWSPAPERS NETTING APPROXIMATELY ONE HUNDRED FIFTY DOLLARS PER SHARE LEAVING YOUR STOCK IN OTHER COMPANIES INTACT. AIR-MAIL LETTER FOLLOWING AND REQUEST YOU BE PREPARED TO WIRE YOUR CONSENT TO INCLUDE YOUR STOCK WITH OURS IMMEDIATELY UPON RECEIPT OF LETTER OR BEFORE. STRONGLY ADVISE YOU GOING WITH US WIRE ACCORDINGLY QUICK KEEPING EVERYTHING CONFIDENTIAL."

It does not appear whether plaintiff received this wire, but on the same day Blandin wrote her a letter embodying a copy of it, the material parts of the letter reading:

"The facts are these: We are selling the assets of the Dispatch Printing Co., in which you hold nine hundred shares of stock for $5,000,000, to be paid for, $4,500,000 cash and $500,000 in class A preferred stock. From this, of course, it will be necessary to deduct the income tax which is as yet an unknown quantity, but we are positive that the receipts from the sale of your stock will be approximately $150 per share in cash, and in addition thereto, you will participate in the preferred stock mentioned above. This preferred stock will be retired within about seven years and bears 7% dividends. The rate of retirement will be approximately $100,000 each year for the first three years, and the balance by applying 40% of the earnings available for dividends on common stock until paid out. This has nothing whatever to do with your stock in the Itasca Paper Co. and subsidiaries and you will still retain that.

\* \* \* \* \*

"We feel that this is a magnificent price for the papers and are equally confident that they will be well carried on in the future. * * * However, your decision to include your stock with ours in the sale remains with you, but we sincerely consider it to your best interest to wire your consent immediately, followed with confirming letter. * * *

"I will appreciate having you send your decision immediately if you have not done so before the receipt of this letter, and ask that you hold *everything confidential.*"

About two months later plaintiff executed the power of attorney referred to. There is nothing in the record to indicate any correspondence or conversations between the parties in the meantime.

We cannot find in Blandin's letter of August 3, 1927, or in the telegram referred to therein, anything that may be construed as an offer to make the contract here relied upon. That being so, there was nothing to accept. But if the letter did contain an offer to do what plaintiff now claims, the proxy or power of attorney has no earmarks of an acceptance thereof. While the letter calls for an immediate decision, the power of attorney was not executed until about eight weeks later. It merely gave defendant Blandin the right, for a limited time, to vote plaintiff's stock in connection with the proposed sale.

The other letter here relied upon by plaintiff is one written by Blandin to her on February 15, 1928, more than four months after the sale was consummated. While it refers to the sale, it pertains more to plaintiff's stock in the Itasca Paper Company and contains an optional offer for that stock, which plaintiff thereafter accepted. Both the offer and acceptance contemplated plaintiff's allowing her holdings in St. Paul Publishers, Inc. to remain as they were at the time, that is, that there be paid to her liquidating dividends at such time as they were declared by the corporation. The letter does not contain an agreement to pay to plaintiff the proceeds of the sale at any fixed time. The only offer it con-

tained was an offer to purchase her stock in the Itasca Paper Company.

A careful review of all the correspondence relied upon by plaintiff leads to the conclusion that she failed to establish a contract, and consequently her action must fail.

The order appealed from is affirmed.