# FIELD-MARTIN COMPANY v. FRUEN MILLING COMPANY AND OTHERS.[1]

June 6, 1941.

No. 32,674.

*O. A. Brecke,* for appellant.

*Fletcher, Dorsey, Barker, Colman & Barber,* for respondent.

[1]Reported in 298 N. W. 574.

STONE, JUSTICE.

Appeal by plaintiff from a judgment discharging a mechanic's lien for a claimed unpaid balance of the contract price for a building constructed by plaintiff, Field-Martin Company, for the Fruen Milling Company. They will be mentioned, respectively, as plaintiff and defendant. The trial involved claims of others with which on this appeal we are not concerned. Both parties assert that the work was done under express contract. The issue was whether, as plaintiff claims, it was done under what we shall refer to as plan No. 1, or, as defendant asserts, under plan No. 2. Defendant's view prevailed below.

■ It will aid discussion and understanding first to state the law which is controlling. As we had occasion to reaffirm but a few days ago (Young v. St. Paul Publishers, Inc. 210 Minn. 346, 298 N. W. 251), the "expression of mutual and final assent is the operation that completes the making of a contract." While ordinarily present, it is not the meeting of minds of the parties, but the expression of their mutual assent that, as to formal contracts, is culmination of the contract-making process. New England Mut. L. Ins. Co. v. Mannheimer Realty Co. 188 Minn. 511, 247 N. W. 803. It is not the subjective thing known as meeting of the minds, but the objective thing, manifestation of mutual assent, which is essential. Benedict v. Pfunder, 183 Minn. 396, 237 N. W. 2.

■ It follows that in some cases the minds of the parties never did meet and that in interpreting and applying offers and their acceptance "what the other party is justified [in] as regarding as assent, is essential." 1 Williston, Contracts (Rev. ed.) § 35.

We take this opportunity of correcting the inadvertent misstatement made in Enge v. John Hancock Mut. L. Ins. Co. 183 Minn. 117, 123, 236 N. W. 207. It was there stated in substance that a contract "contemplates a meeting of the minds on a proposition" and that "both [parties] must understand the agreement alike." Insofar as it disagrees with what has just been written, that statement should be disregarded.

■ Where an offer is accepted, the undisclosed understanding of the offeror concerning the meaning of his own ambiguous words or conduct is immaterial insofar as the offeree, without notice of the undisclosed understanding of the offeror, has reasonably and in good faith construed the offer in accepting it otherwise than the offeror intended. Restatement, Contracts, § 71.

■ Now for the facts. In the spring of 1936, negotiations began and continued for some time between plaintiff and defendant for the construction by the former on the premises of the latter of an elevator building. On the technical side, Mr. Hustad, a construction engineer, prepared the plans. June 6 he had completed, and both parties were familiar with, plan No. 1. It was not satisfactory to defendant. Negotiations continued, contemplating substantial changes in plan No. 1. All through defendant was anxious, and constantly saying so, for a guaranteed maximum cost. Result of the continuing negotiations was a substantial revision of plan No. 1, incorporating certain changes which had been under discussion. This was plan No. 2, which on June 29 was in the drawing board stage in Mr. Hustad's office. There is evidence warranting the conclusion that both parties were familiar with the second plan and its indicated changes in the proposed structure.

June 29, plaintiff prepared and delivered to defendant a written proposal as follows:

"We propose to furnish all labor and materials necessary for the construction of a new cleaning house as shown on the plans of the Hustad Company, with a basement and first floor slab taking in the 18 feet between the new cleaning house and the power plant and a similar basement and floor slab between the new cleaning house and the present elevator for a guaranteed maximum of Twenty-six Thousand Three Hundred Sixty-five and 98/100 Dollars ($26,365.98).

"All savings effected on this job revert to the owner."

That offer was accepted by defendant, and the work proceeded to completion, or nearly so, thereunder. Then came the contro-

versy, the cost having substantially exceeded the sum stated in plaintiff's offer. On plaintiff's side, the assertion is that its offer of June 29 referred to and was based on plan No. 1. Defendant, on the other hand, asserts and therein is sustained by the decision below, that the offer was based upon and incorporated by reference plan No. 2.

In this disagreement lies both crux and cause of the controversy. Its resolution determines whether the cost of the changes incorporated in plan No. 2 should be added to the "guaranteed maximum" in computing the amount due plaintiff. If the contract was referable to plan No. 2, the cost of the building contemplated by that plan must be limited to the stated maximum. If that be so, the decision below is right.

We have reviewed the evidence and reduced to writing our analysis of it consisting of many pages of typing. To include it here would accomplish no purpose, so it is omitted. It is enough to say that in our appraisal of the conflicting testimony we have found ourselves unable to say that the decision below is not reasonably sustained by the evidence for defendant. Therefore it must stand.

The evidence for defendant, believed as it was by the trier of facts, sustains the view that, justifiably and in good faith and in ignorance of plaintiff's undisclosed intention, defendant considered the proposal of June 29 as referring to and incorporating plan No. 2 rather than plan No. 1.

In its environment of negotiation and in application to subject matter, plaintiff's offer was ambiguous. So it was in need of construction, first, by defendant and, later, by the court. Compare Wilmot v. Minneapolis Auto. Trade Assn. 169 Minn. 140, 210 N. W. 861; City of Marshall v. Gregoire, 193 Minn. 188, 259 N. W. 377, 98 A. L. R. 711; In re Estate of Soper, 196 Minn. 60, 264 N. W. 427. On sufficient evidence, defendant's construction of the offer has been found reasonable and made in good faith in ignorance of plaintiff's undisclosed intention concerning its offer. That settles the matter.

In reading the record, one cannot avoid reflection on the amount of annoyance, money, and more valuable friendship that would have been saved had the parties made timely resort to legal aid for prevention of controversy rather than later and compelled use of it in litigation.

Judgment affirmed.