## INDUSTRIAL PRODUCTS MFG. CO. v. JEWETT LUMBER CO.

No. 14139.

United States Court of Appeals
Eighth Circuit.

Dec. 19, 1950.

Rehearing Denied Jan. 22, 1951.

Howard L. Bump, Des Moines, Iowa (Charles M. Bump, Des Moines, Iowa, and Elmer E. Hall, Kansas City, Mo., were with him on the brief), for appellant.

Don E. Neiman, Des Moines, Iowa (John H. Neiman, Des Moines, Iowa, was with him on the brief), for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

Federal jurisdiction of this action existed by reason of diversity of citizenship and amount involved.

The Industrial Products Manufacturing Company, a Missouri corporation, filed its complaint as plaintiff against the Jewett Lumber Company, an Iowa corporation dealing at retail in lumber and associated products at Des Moines, as defendant, to recover the agreed purchase price of materials which plaintiff alleged it manufactured and shipped to defendant pursuant to a contract evidenced by writings set forth in the complaint.

The writings included an itemized order for merchandise written on three pages of conventional printed order blanks numbered, respectively, 5040, 5041 and 5042. It described each item ordered, the quantities and unit prices, the amount to be paid for each item and the total amount to be paid, $10,354.50. The order showed on its face that it was an order given by the defendant to a corporation called The Elaterite Corporation, not a party to the action, but plaintiff alleged that the order was signed by the defendant and The Elaterite Corporation on February 22, 1949, and delivered on that day to The Elaterite Corporation and that The Elaterite Corporation delivered it to plaintiff. That the plaintiff not being satisfied with the credit rating of The Elaterite Corporation, refused to fill the order for that corporation unless and until the defendant lumber company would agree to accept the merchandise and pay plaintiff for it. That thereafter the defendant was notified that the order would not be filled for The Elaterite Corporation but would be filled if the order was made direct by defendant to plaintiff. That thereafter on March 7, 1949, the defendant telegraphed plaintiff as follows:

"Reference Elaterite Order 5040 through 42 cut in half item by item and ship your convenience.

"Jewett Lumber Co."

That thereafter and on March 10, 1949, the defendant by its letter of that date to the plaintiff directed the plaintiff to manufacture the goods and ship the same to defendant direct. The letter was received March 11, 1949, and read:

"Industrial Products Mfg. Co.
"1208 Iron Ave.
"N. Kansas City, Missouri
"Gentlemen:

"This is your authority to bill us direct for shipment you make against order numbers 5040, 5041 and 5042 given by us to The Elaterite Corporation on February 22, 1949, per our shipping instructions in our telegram to you on March 7, 1949, and in accordance with the terms of that order.

"Jewett Lumber Company,
"Homer H. Jewett,
"By Homer Jewett, Secy.

"The foregoing is in accordance with the agreement between The Elaterite Corporation and Industrial Products Mfg. Co., March 9, 1949.

"The Elaterite Corporation,
"By J. Bernard Hagan, President."

That on about March 11, 1949, plaintiff accepted the order and on March 15, 1949, shipped the merchandise as itemized and priced in the said order, one-half in amounts and quantities, as directed by the telegram, and invoiced the defendant therefor in the sum of $5,177.25. That the defendant received the same and retained the goods until about June 2, 1949, when it shipped them back to plaintiff. The plaintiff refused to accept them. Plaintiff prayed judgment for one half of $10,354.50 or $5,-177.25, with interest and costs.

Defendant in its answer admitted that it executed the order and sent the telegram and the letter as set forth in the complaint, and that it received the goods and was invoiced therefor as therein alleged, and that it retained them for a period and then shipped them back to plaintiff.

It pleaded as defense that on March 3, 1949, before it sent the telegram or the letter to plaintiff as set forth in the complaint, the defendant and The Elaterite Corporation by agreement between them modified the terms of the order for merchandise and endorsed upon the order the following:

"The payment agreed to on this order dated February 22, 1949, and covered by

orders # '5040, 5041, and 5042, and dealers franchise even date is as follows:

"Cash discount 3%—10 days from receipt of goods—or 3% discount with trade acceptance on receipt of invoices dated 30, 60, 90, or 120 da., or net 30, 60, 90, or 120 days with TA's JBH HJ.

"All goods purchased on these orders may be exchanged at any time for other items in the company line, or they may be returned for credit at invoice price any time within 180 days from date of order.

"Jewett Lumber Company
"By—Homer H. Jewett, Secy.
    "Homer H. Jewett, Secy.
    "The Elaterite Corporation,
    "By—J. Bernard Hagan, President."

That such modification of the order was signed by said parties and delivered to each of them and became a part of the order on March 3, 1949. That although the order had been signed on February 22, 1949, it was not actually delivered to The Elaterite Company until March 3, 1949. Defendant pleaded that it requested the shipment from the plaintiff and the plaintiff made the shipment pursuant to the order as it was amended on March 3, 1949. As so amended the defendant had reserved the right to return the goods within 180 days at invoice prices and it had so returned them. It also pleaded that it had entered into an agency or dealer contract with The Elaterite Corporation on February 22, 1949, for selling Elaterite goods and that there was included in said contract a provision that "any unsold merchandise exchanged or credit memo issued within 180 days from above date [date of dealer contract]." It attached a copy of the dealer contract to its answer. It prayed that plaintiff's action be dismissed.

In its reply to the answer the plaintiff pleaded that if the order was amended as alleged the plaintiff had no knowledge or notice of it until long after it shipped the goods and that defendant was estopped to assert the amendment to their contract for the reason plaintiff had acted in relation to the contract of February 22, 1949. Plaintiff also alleged that the goods were shipped under a contract between plaintiff and defendant and that the undertaking between plaintiff and defendant was original in character. It prayed judgment as in its complaint. Defendant traversed the reply.

At the conclusion of all the evidence on the jury trial the defendant moved for directed verdict in its favor on the alternative grounds, (1) if plaintiff relied on an assignment of the order from The Elaterite Corporation it could not recover because all defenses which defendant could assert against The Elaterite Corporation would be available against plaintiff, (2) that the telegram of March 7 and the letter of March 10 from defendant to plaintiff were not sufficient to effect a new contract because there was no meeting of the minds—each party having meant a different thing when referring to "the order of February 22", the lumber company meaning the order as amended on March 3, and the Industrial company meaning the order as it stood, not amended.

The motion for directed verdict for the defendant was sustained and judgment of dismissal followed. The plaintiff appeals. It contends that the court erred in sustaining defendant's motion for directed verdict and that the judgment pursuant to that ruling was erroneous.

The pleadings presented the issue of whether the order for the merchandise called Elaterite order, 5040 through 42, of February 22, 1949, was delivered to the Elaterite company before or after it had been amended by the parties to it on March 3, 1949, but the evidence was clear that such delivery was on February 22, 1949. The evidence was that on that date each of the three sheets of the order was written up in duplicate on Elaterite printed order forms, a carbon paper being used to produce an "original" and a "carbon copy", and on completion of the signing of both copies the "original" was delivered to Mr. Hagan, representative of The Elaterite Corporation. On the next day, February 23, 1949, the plaintiff received an order for the goods from The Elaterite Corporation but instead of accepting it requested the presence of

Mr. Hagan at its office, told him that the order involved more money than plaintiff felt it could credit Elaterite and refused to fill it. Unsuccessful attempts were made to get credit for Elaterite and Mr. Hagan suggested that the plaintiff company could perhaps handle the order if it could bill the defendant lumber company direct and plaintiff agreed that perhaps something could be worked out along those lines and Mr. Hagan turned the order over to the plaintiff. It was in that situation that the defendant instructed the plaintiff by telegraph to cut the order in half and to ship at plaintiff's convenience and by its letter authorized the plaintiff to bill defendant direct for shipment made against the order of February 22, 1949, as reduced in amounts by the telegram.

As plaintiff did not plead or claim that it was an assignee of The Elaterite Corporation, the first alternative ground of defendant's motion for directed verdict may be disregarded. The comment of the court shows that it was not the ground on which the ruling on the motion was rested.

It is on the second ground—whether or not there was a new contract between the plaintiff and defendant—that decision of the case must turn.

It is the contention of the defendant that there could not be a new contract between plaintiff and defendant because there was no "meeting of the minds" of the parties, in that one party meant one thing by the words used in the telegram and letter by which the offer to buy the goods was made, while the other party who accepted the offer and manufactured and shipped the goods meant something else. The phrase adopted by the defendant—"meeting of the minds"—is an ancient and venerable term, and it is widely accepted that there must be a "meeting of the minds" if there is to be a contract. The difficulty arises, however, in trying to determine when the minds of the parties have met. Defendant's position, in effect, is that only the terms in the minds of each of the parties to a contract constitute the terms of the contract, and that the mental processes of each party must concur

before a contract can result. But courts are not so limited in their enforcement of contracts. On the contrary, it is what is expressed by the parties that constitutes the contract which courts enforce. In Longmire v. Diagraph-Bradley Stencil Mach. Corp., Mo.App., 176 S.W.2d 635, 646, it is said, "Though there must be a meeting of the minds of the parties to constitute a contract, such meeting of the minds is to be determined by the expressed, and not by the secret, intention of the parties."

In Canister Co. v. National Can Corp., D.C., 63 F.Supp. 361, 365, it is well stated: "It is true that mutual assent is an essential prerequisite of the formation of a contract. But the test as to whether there is mutual assent is objective and does not depend upon the undisclosed intentions of the parties. Since the test is objective, the formation of a contract does not require 'the meeting of the minds' of the parties. Despite early dicta to the contrary, this view is now almost universally accepted." Holmes, in "The Path of the Law", (10 Harv.L.R. 457, 464) says: "In my opinion no one will understand the true theory of contract or be able to discuss some fundamental questions intelligently until he has understood that all contracts are formal, that the making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having *said* the same thing."

In Field-Martin Co. v. Fruen Milling Co., 210 Minn. 388, 298 N.W. 574, 575, there was a dispute between the parties as to what the word "plans", as used in an offer to contract, referred to—the defendant contending it meant one plan while plaintiff who had used the word contended he meant another plan. The evidence showed the word could have been reasonably understood by defendant only as he did understand it. The court held a contract did exist, saying, "It is not the subjective thing known as meeting of the minds, but the objective thing, manifestation of mutual assent, which is essential. * * * It follows that

in some cases the minds of the parties never did meet and that in interpreting and applying offers and their acceptance 'what the other party is justified as regarding as assent, is essential.' 1 Williston, Contracts, Rev.Ed., § 35." To the same effect see 17 C.J.S., Contracts, § 32; New England Mutual Life Ins. Co. v. Mannheimer Realty Co., 188 Minn. 511, 247 N.W. 803; McClintock v. Skelly Oil Co., 232 Mo.App. 1204, 114 S.W.2d 181; Muegler v. Crosthwait, Mo.App., 179 S.W.2d 761; Jenkins v. King, 224 Ind. 164, 65 N.E.2d 121, 163 A.L.R. 397.

In this case there was no lack of agreement on the part of the offeree, the plaintiff. The telegram of March 7 and the letter of March 10, coupled with a reference to the merchandise order of February 22, the original copy of which plaintiff had in its hands led to one definite, unambiguous contract. Plaintiff had not sought the contract, and had not been a party to the binding contract between the defendant and Elaterite. Instead, the defendant chose to wire and write plaintiff and offer a new contract. The terms of this new contract were different as to amounts of merchandise ordered, for the defendant telegraphed to ship "one-half item by item". The defendant chose its own terms when it wrote to plaintiff, and its telegram and letter did not refer to the order of February 22, as amended by the agreement of March 3. Instead, the defendant made only a definite reference to the contract of February 22, when it was well known to it that that contract had been amended by Elaterite and the lumber company on the duplicate copy retained by the defendant, and when it was also known to it that somewhere the original of that contract was in existence without the supplemental agreement endorsed upon it.

The plaintiff was fully justified in acting as it did. The only fair inference the plaintiff could draw from defendant's communications was that the lumber company offered to make a new contract. The terms of this new contract were clearly set out—

plaintiff was to ship directly to the defendant and was also to bill it directly. The materials to be shipped and the prices were to be determined by reference to the prior contract between the lumber company and Elaterite with the further stipulation that only one-half of the amounts there set out were to be shipped. Knowledge that the contract referred to had been amended could not be imputed to the plaintiff. The defendant therefore is bound by the plain words it chose to employ in its offer made to and accepted by plaintiff.

We find nothing in the evidence to justify an inference that the plaintiff agreed to accept a return of the materials in lieu of payment. Under its arrangement with the Elaterite Corporation the defendant had and no doubt still has a right to return the materials to Elaterite.

In its brief on appeal, the lumber company suggests that in the event there was a contract between the defendant and plaintiff, then in the negotiations leading up to that contract, the Elaterite representative acted as the agent of plaintiff so as to charge plaintiff with knowledge of the amendment to the order. But such issue was not presented to or passed on by the trial court. We find no evidence to support it. It is not here for review.

It is further argued that since both parties have been restored to their prior position, no damages were recoverable. That does not fit in with the facts in the case. The materials of the shipment made to the lumber company were made to order according to a certain formula. Those materials are not such as the plaintiff keeps in stock and the plaintiff has not been restored to its original position.

The law of contracts governs in this case. The defendant's offer to plaintiff was open to only one reasonable interpretation by plaintiff. It was accepted upon that interpretation and performed by plaintiff. The court erred in directing a verdict for defendant.

Judgment reversed and case remanded for new trial at appellee's costs.