## HARRY L. BALOW v. KELLOGG COOPERATIVE CREAMERY ASSOCIATION AND ANOTHER.

78 N. W. (2d) 430.

July 6, 1956—No. 36,815.

*Reynolds & McLeod,* for relators.
*Foley & Foley,* for respondent.

DELL, CHIEF JUSTICE.

Certiorari to review decision of the Industrial Commission which awarded respondent, Harry L. Balow, an employee of relator Kellogg Cooperative Creamery Association, compensation and medical expenses in the sum of $628.10. It is employee's contention, and the commission determined, that his disability, which occurred August 19, 1954, from the strangulation of a left inguinal hernia with which he then suffered was due to an injury sustained in an accident arising out of and in the course of his employment. The commission also determined that the employer had due and statu-

tory notice and knowledge of the August 19, 1954, occurrence and hence became liable for compensation for the disability of employee which followed.

On appeal relators, the employer and its insurer, contend that the evidence does not support a finding that employee's disability was due to an injury arising out of and in the course of his employment; and that the employer did not have due and statutory notice or knowledge of his original left inguinal hernia so as to obligate it to compensate him for the disability which arose following its ultimate strangulation on August 19, 1954.

Employee commenced his employment with Kellogg Cooperative Creamery Association upon his discharge from the army in 1944. At that time he was in sound health and had never experienced any difficulty with hernia. His work for the most part consisted of lifting and emptying filled milk and cream cans weighing between 115 and 120 pounds each and he handled between 300 and 400 daily. He testified that during 1949 or 1950 a hernia appeared on his right side and that later during 1952 or 1953 his left side became similarly affected; that when he first noticed them "a sort of bump appeared there in the groin" while he was engaged in lifting the cans during his workday; that for the hernia on the right side he wore a truss which "took care of it pretty well"; that he tried to wear a truss for the left side but that it never kept in place and that he stopped wearing it; that the left hernia came out quite often while he was working and that on such occasions he merely pushed it back within his abdomen; and that he did not notify anyone of it and continued in his employment doing the regular work above described until August 19, 1954. He further testified that at about 1 p. m. that date, shortly after he resumed employment after lunch and while lifting the cans, the hernia on the left side "came out"; that on this occasion contrary to his previous experience after he pushed it back in it would come "right out again * * * it wouldn't go back"; that it did not give him any pain at that time and that he continued to work for the remainder of the day; that the right hernia did not then give him any difficulty; that that evening after

he had retired, the left hernia became very painful until finally he called Dr. L. M. Ekstrand of Wabasha; that at 11 p. m. the same night he was taken to the hospital and that surgery was performed upon him to repair the left hernia early the following morning; and that subsequently on August 30, 1954, the hernia on the right side was repaired. He returned to work November 29, 1954.

Dr. Ekstrand testified that his examination of employee the night of August 19, 1954, disclosed a large irreducible hernia in the left inguinal region—quite painful to manipulate; that he was unable to get the hernia contents back within employee's abdomen and hence surgery became the only recourse; and that surgery was performed in repairing the hernia early the following morning. He testified further that employee's work in lifting the loaded milk or cream cans could produce the hernia described and that the condition which developed August 19, 1954, might be experienced by anyone suffering from an inguinal hernia which had not been repaired. With respect to the right hernia, he testified that it was to employee's best interests to have this repaired while he was in the hospital to avoid the need for doing so later in the event it ever became disabling.

Dr. Rudolph E. Hultkrans, called by relators, testified that employee's hernial condition on August 19, 1954, was not the result of his work but was rather the development of the original hernia in the natural course of its growth and the result of previous weaknesses. He conceded that a hernia, such as respondent suffered, might develop from physical exertion from work such as performed by respondent; that often a hernia does not strangulate and that a hernia could exist for many years before strangulation; that strangulation is an uncommon and unusual complication of a hernia; and that an existing hernia might not cause disability for a number of years and that disability could ultimately arise therefrom because of some physical exertion on the part of the person suffering therewith.

■ Our function is to determine whether the evidence supports the commission's findings that employee's disability, resulting from the strangulation of his left inguinal hernia on August 19, 1954, arose

out of and in the course of his employment and that his employer had the required statutory knowledge or notice thereof. If the evidence reasonably sustains such findings, under well-established rules we are bound thereby. Hansen v. Adent, 238 Minn. 540, 57 N. W. (2d) 681; Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797; Fisher v. Fisher, 226 Minn. 171, 32 N. W. (2d) 424.

■ We are of the opinion that the evidence reasonably supports such findings. It is undisputed that prior to his employment, employee was in sound physical condition and had never suffered from hernia. Both medical experts testified that his work in lifting the heavy milk and cream cans could produce inguinal hernias such as respondent suffered. The fact that the left inguinal hernia had existed some time prior to August 19, 1954, without disabling effects would not constitute a bar to employee's right to claim compensation for disability occasioned by the development of its strangulation on that date if such strangulation was due to any exertion required in his employment. It has frequently been held that although an employee may be predisposed to hernia, or may have a congenital weakness or condition favorable to the development thereof, if an unusual strain or overexertion attendant to his work induces its development, such strain or exertion is the legal cause thereof and any resulting disability arising therefrom is compensable. Klika v. Independent School Dist. No. 79, 161 Minn. 461, 202 N. W. 30. Likewise, it has been held that such exertion need not be something extraordinary but merely that required in the employee's usual tasks in connection with his work, Zobitz v. Oliver Iron Min. Co. 167 Minn. 424, 209 N. W. 313; Rivard v. J. F. McElwain Co. 95 N. H. 100, 58 A. (2d) 501; Giguere v. E. B. & A. C. Whiting Co. 107 Vt. 151, 177 A. 313, 98 A. L. R. 196; Smith v. Cabarrus Creamery Co. 217 N. C. 468, 8 S. E. (2d) 231; contra, Foster v. Atlas Lbr. Co. 155 Neb. 129, 50 N. W. (2d) 637; and that whether the final collapse of a physical component of an employee's body is occasioned by one sudden wrench or jerk or occurs at the end of a long series of jars occasioned by and connected with the work

required of such employee is immaterial insofar as the right to compensation therefor is concerned. Caddy v. R. Maturi & Co. 217 Minn. 207, 14 N. W. (2d) 393.

■ In the instant case the evidence is sufficient to support the commission's determination that employee suffered from a left inguinal hernia which originally developed in 1952 or 1953 from the exertion required of him in connection with his usual work in lifting and emptying the heavy milk and cream cans; that such hernia did not create any disability until it became strangulated on August 19, 1954; that such strangulation occurred because of his exertions on that date in connection with his regular work; and that it was the final result of a long series of such exertions and resulted in his disability. It would follow that under M. S. A. 176.141,[1] and the principles outlined above, his disability thereafter became compensable, provided his employer had the required statutory knowledge or notice of the occurrence thereof.

■ M. S. A. 176.141 specifies that unless knowledge of an injury be obtained or written notice thereof given within 90 days after its occurrence, no compensation therefor shall be allowed under any circumstances. It is the employer's contention that thereunder, since more than 90 days had elapsed after employee first sustained the left inguinal hernia in 1952 or 1953,[2] and since it had no knowledge or notice thereof until August 19, 1954, there was no obligation on its part to pay compensation because of its ultimate strangulation on the latter date. Employee concedes that no notice of the original hernia was given the employer but contends that since no disability arose therefrom until August 19, 1954, the time for giving notice thereof under § 176.141 commenced to run from that date. It is conceded by the employer that it had knowledge of the strangulation of the hernia which occurred on August 19, 1954, within the time prescribed by § 176.141.

We have held that, when the act speaks of the occurrence of any injury, it refers to a "compensable injury" and that such an injury

---

[1] L. 1953, c. 755, § 14.

[2] M. S. A. 1949, § 176.16, in effect at that time, was substantially the same as § 176.141.

occurs when disability first appears; that the Workmen's Compensation Act is intended to compensate employees for *every* disability or loss of earning power caused by any accidental injury received in the course of employment, whether disability therefrom results immediately, or, in the case of latent or dormant injuries, is delayed; and that as to notice under § 176.141 the time therefor commences to run when the disability occurs or when it becomes reasonably apparent that it is likely to occur. Clausen v. Minnesota Steel Co. 186 Minn. 80, 242 N. W. 397. Whether an injury is of such a nature as to indicate to an employee that it will result in disability or the date when it first becomes apparent to him that an injury believed to be nondisabling would actually result in disability are ordinarily questions of fact. Clausen v. Minnesota Steel Co. *supra;* Bruggeman v. Ford Motor Co. 225 Minn. 427, 30 N. W. (2d) 711.

There is implied in the commission's findings here the fact that employee's left inguinal hernia did not result in disability or give him reasonable grounds to believe that it would so result until August 19, 1954, and there is ample evidence to sustain such findings. Prior to that date, it was not productive of pain and did not result in any physical disability depriving respondent of the normal functions in the use of his body. He continued in his employment and it in no way impaired his work requirements or caused a loss of time until subsequent to August 19, 1954. Relators' medical expert conceded that many men suffer hernias during their entire life without disability. He conceded further that on occasion some exertion may aggravate a hernia so as to result in disability for the first time. Clearly the employee was justified in concluding that, since his left inguinal hernia was not disabling or painful, and at no time caused either loss of time from his employment or an incapacity to perform it, no compensable disability would result therefrom. When such disability finally occurred August 19, 1954, his employer had knowledge thereof well within the statutory period prescribed by § 176.141 and hence under the act became liable for compensation for medical expenses and loss of time because thereof.

The order of the commission is affirmed. Costs and disbursements and attorney's fees in the sum of $250 on the proceedings here are allowed employee.

Affirmed.