## JENS SORENSEN v. P. H. THOMPSON & SON AND ANOTHER.

79 N. W. (2d) 673.

November 30, 1956—No. 36,756.

*Robins, Davis & Lyons, Willard L. Converse, Arnold M. Bellis,* and *Gaarenstroom and Gaarenstroom,* for relator.

*Mahoney & Mahoney,* for respondents.

FRANK T. GALLAGHER, JUDGE.

Certiorari to review a decision of the Industrial Commission reversing the determination of the referee, and finding that relator was not an employee of respondent P. H. Thompson & Son and thus not within the coverage of the Workmen's Compensation Act.

Relator, Jens Sorensen, who did tiling and occasional dynamiting, filed his petition with the Industrial Commission to recover compensation alleged to be due him as a result of personal injuries sustained from a premature explosion of dynamite while in the alleged employ of respondent P. H. Thompson & Son. The facts out of which this claim for compensation arises are substantially as follows:

P. H. Thompson & Son, located at Frost, Minnesota, is a firm which engages primarily in road construction but in addition also does land clearing for farmers. A bulldozer is the usual means used in clearing land, but the firm also has employed men to dynamite stumps that are to be removed.

Sometime in October 1953, Harlan Pirsig, the son and tenant of Otto Pirsig, approached P. H. Thompson for the purpose of engaging the Thompson firm to clear land of stumps on the Pirsig farm, in the vicinity of Blue Earth, Minnesota. Thompson agreed to do the work, visited the farm, and talked with Otto Pirsig to determine the extent of the job and the means required to perform it. Although the evidence is conflicting as to what was said, the possibility of using dynamite was discussed.

Subsequently, Thompson visited the Moore farm, where one of his bulldozers was engaged in clearing land, to ascertain when the job would be completed so that he could inform the Pirsigs when to expect the bulldozer. Thompson met Sorensen for the first time at the Moore farm, where it appears the latter was employed by Moore dynamiting stumps.

There is no substantial conflict concerning some of the conversation between Sorensen and Thompson. The testimony of both showed that Thompson inquired of Sorensen whether he did that kind of work (blasting). Upon hearing that he did, Thompson informed him that the Thompson firm had some stump dozing to do at the Pirsig farm and that some of the stumps should be blasted. Thompson asked Sorensen how much he charged per hour and whether he had time to do the work. After a brief consideration, Sorensen said he could do the work and told Thompson his price. At this point there is a conflict in the testimony as Thompson testified at one place

that he said, "I told him he was to go in and see Pirsigs, if it was okay with them if he done the work" while at another place he said, "I told him I would go in to see Pirsig, if it's okay with him." Sorensen testified that Thompson merely asked where Otto Pirsig lived. At any rate there were no definite statements as to who would be the employer and Sorensen did understand that Thompson went to see Pirsig. A short time later that day Thompson returned and according to his testimony told Sorensen "that it was okay with Pirsig," but Sorensen claims he said "it's okay for you to go over there and blow them stumps."

When Thompson left Sorensen to see Pirsig, he went to the Otto Pirsig home in Blue Earth. Harlan was there, and Thompson testified that he told Harlan about meeting Jens Sorensen and that the Pirsigs could get him to do the blasting. Upon receiving Harlan's approval, he returned to tell Sorensen. Harlan testified that Thompson told him his son wouldn't be able to do the blasting, asked if it were all right to get someone else, and explained that Sorensen would do the work. Harlan further testified that, when he gave his assent to Sorensen doing the work, Thompson said he would go and hire him.

Thompson further testified that he did not tell Sorensen when to go on the job; that he did not know when he went on the job; that he did not point out to Sorensen the stumps that were to be blown; and that he was not at the Pirsig farm at any time while Sorensen was doing the work. He claims that he did not have Sorensen's social security number nor a report on his records for either of the days Sorensen worked at the Pirsig farm and that at no time did he have Sorensen's name on his payroll records.

On Sunday, December 6, 1953, Sorensen went to the Pirsig farm, saw Harlan Pirsig, and inquired about the extent of the job for the purpose of knowing how much dynamite to purchase. The next day he purchased the dynamite and then went to the Pirsig farm and began the work, assisted to some extent on that day by Harlan Pirsig. The following day, December 8, while working alone, Sorensen received injuries to his eyes and ears when he had difficulty setting a dynamite charge and it exploded within a few feet of his body.

Although Thompson had not entered Sorensen's name on any company records, which was not uncommon for him in the case of casual employees, he did inform his insurer of the accident. Thompson billed Pirsig for the cost of the bulldozer alone, which bill is unpaid as Pirsig contends Sorensen's labor should be included. On release from the hospital, in company with the Pirsigs, Sorensen presented a bill to Thompson which was refused on the ground that he was not Sorensen's employer.

A referee of the Industrial Commission, after a hearing, found that Sorensen was an employee of P. H. Thompson & Son on December 8, 1953, and that he sustained his injuries in an accident arising out of and in the course of his employment. The Industrial Commission (one member dissenting) set aside the findings of the referee and in lieu thereof found that he was not in the employ of P. H. Thompson & Son but that on said date he sustained personal injuries by an accident arising out of and in the course of his employment by Otto Pirsig, a farmer who was not insured and had not voluntarily assumed liability under the Workmen's Compensation Act.

The legal issues raised on appeal are: (1) Whether there was a contract of employment between Sorensen and Thompson; (2) whether the commission in deciding that no such contract existed erroneously gave controlling weight to conversations and conduct between Thompson and Pirsig while excluding from consideration evidence pertaining to Sorensen's reasonable and good-faith belief that he was contracting with Thompson.

After a careful review of the record and the issues raised upon appeal in this case, it is our opinion that they present a fact question as to whether various conversations between Thompson and Sorensen and other circumstances constituted an employment contract between them. The question is a close one, and, while we might have decided it differently had we been the triers of the facts, we have repeatedly said, with reference to the scope of review on appeal from the decision of the Industrial Commission, that it is the function of this court to determine whether the evidence is such that the commission might reasonably have come to the conclusion

which it did. If so, the findings will not be disturbed unless they are manifestly contrary to the evidence. Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797; Baburic v. Butler Brothers, 233 Minn. 304, 46 N. W. (2d) 661.

Sorensen contends, however, that, in finding that a contract of hire existed between Pirsig and him, the commission erred in not giving controlling weight to evidence establishing the reasonable and good-faith belief of Sorensen that he was contracting with Thompson. He argues that the offer by Thompson was ambiguous and that therefore applicable contract principles dictate that the evidence establishing Sorensen's reasonable belief should be given controlling weight in the commission's finding of a contract. The commission in its finding that Sorensen, a casual, was employed by Pirsig did consider other evidence besides the conversations between Sorensen and Thompson as its opinion shows. If the offer was ambiguous, and it undoubtedly was, it was or should have been ambiguous to both parties. The contract principle applicable to these facts is stated in Restatement, Contracts, § 71(b):

"If both parties know or have reason to know that the manifestations of one of them are uncertain or ambiguous and the parties attach different meanings to the manifestations, this difference prevents the uncertain or ambiguous manifestations from being operative as an offer or an acceptance."

The present case does not present a situation where the purported offer of Thompson was or should have been ambiguous to him only so that Sorensen's reasonable and good-faith belief concerning the ambiguous offer should bind Thompson.[1] Rather it appears to us, looking at the record as whole and examining the testimony in the light most favorable to the prevailing party as we must, that there was evidence from which the commission could find as it did. This court cannot disturb the findings of the commission unless consideration of the evidence and the inferences permissible

[1] We have considered Field-Martin Co. v. Fruen Milling Co. 210 Minn. 388, 298 N. W. 574, and other cases cited by relator but do not consider them controlling under the facts and circumstances of this case.

therefrom would clearly require reasonable minds to adopt a contrary conclusion. Casey v. Northern States Power Co. 247 Minn. 295, 77 N. W. (2d) 67; Judd v. Sanatorium Comm. of Hennepin County, 227 Minn. 303, 35 N. W. (2d) 430.

Here we have a situation where it is unfortunate that Sorensen had not been more specific with Thompson in determining for whom he was to work before he attempted to dynamite the stumps on the Pirsig farm. Too often such "casual" deals are handled in a rather hasty or haphazard manner, which is unfortunate when an accident happens. However, we as a court cannot change the record before us nor can we insert our own facts to substitute for missing ones which might have constituted a contract.

We have carefully reviewed the commission's findings and decision in this matter, and, in view of the entire record, we cannot say as a matter of law that the commission erroneously gave controlling weight to certain conversations and conduct between the alleged employer and a third party while excluding from consideration evidence pertaining to employee's reasonable and good-faith belief that he was contracting with said employer.

Affirmed.