JUDY LUNA v. ARMOUR & COMPANY.

105 N. W. (2d) 689.

October 28, 1960—No. 37,974.

*Mahoney & Mahoney,* for relator.
*Charles C. Reischel,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review a decision of the Industrial Commission.

Judy Luna was employed by Armour & Company. She had worked for the company since December 5, 1951, and for several years prior to August 25, 1958, had been engaged in work as a "Treet puller."

Her work consisted of removing cans of a meat product known as "Treet" from a wire basket and depositing them on a conveyor belt. The baskets, which were rectangular in shape and approximately 3 feet long, 2 feet wide, and 2 feet deep, stood on a metal stand in front of the employee. They had a hinged or drop side facing her. She stood on a metal platform facing the basket, the top of which was at chest level and the bottom at approximately knee level. The conveyor belt ran directly behind her.

The baskets were packed with cans of "Treet" in approximately 7 or 8 layers, 1,280 cans to a basket. Each can was about 2 inches wide, 4 inches long, and 4 inches high, and weighed about 1 pound. The employee removed the cans from the basket using both hands, taking two in each hand, and then turned to place the cans on the conveyor behind her. She turned the cans so that the keys were up, so placing them that they would go through a small aperture for packing purposes. She emptied about 3 baskets per hour.

It is her contention that the performance of her work during the week of August 25 to 29, 1958, either caused a back condition or aggravated a preexisting back strain so as to result in total disability from September 23 to November 10, 1958, and partial disability from November 11, 1958, to March 24, 1959.

After working on August 25, 1958, up to lunch time, the employee said that her back "was aching very bad" and that the pain became more intense "as the day wore on." She said she rubbed her back with ointment that evening but had difficulty sleeping. The pain eased somewhat over night and she performed some work the following day

from 7 to 9:15 a. m. She said that because of the increased pain she then went to the medical department where she had heat-lamp treatments and was given some pain pills. She claims the pain eased temporarily but increased as she worked and hampered her in the performance of her duties. That evening she again rubbed herself with balm but had a restless night with a lot of pain. She returned to her job the following day doing the same type of work and received another lamp treatment, after which she worked to the end of the day. She testified she continued to work on August 28 and 29 but that the pain got progressively worse.

At the end of the day on August 29, 1958, she was laid off in what was characterized as a reduction in force. She said that her back pain persisted from that date to September 22, 1958, in more or less the same way and that she could not even do her housework. She registered at the unemployment office for the week of September 1 to 6, 1958, and drew unemployment compensation for one week.

Employee said that on September 22, 1958, while standing in line to apply for compensation at the unemployment office, she experienced an onset of hot pain shooting down both sides of her back. She went home, rubbed her back with balm, took pain pills, and went to bed, using a hot water bottle to aid in relieving the pain. She contacted a doctor and was hospitalized from September 23 to October 2, 1958. While in the hospital under the doctor's care, she was given bed rest, traction, medication, and a back support. Upon discharge from the hospital she was advised to refrain from lifting, bending, or doing housework.

Dr. Palm, employee's doctor, testified that she was totally disabled from doing any work from September 23 to November 10, 1958, inclusive, and partially disabled from November 11, 1958, to March 24, 1959, subject to a 25-percent general bodily disability. He further testified that she had no permanent disability. When questioned as to whether she would need further medical treatment and care for her back condition, the doctor replied, "By the very nature of the back disease, the chronicity and the recurrence, I suspect she will require some treatment occasionally."

Employee continued to have residual back complaints. Dr. Palm

diagnosed her condition as lower back muscle strain, aggravated by her employment activities in August 1958. He said that on November 10 he told the employee that she could return to work but advised her not to do any bending or heavy lifting.

The only other medical testimony was that of Dr. Arthur H. Pedersen, who testified in behalf of the employer to the effect that the employee had no injuries and that he could find nothing wrong with her physical condition.

It appears from the record that the employee did not work during April, June, and the first half of July 1958. She testified that on August 1, 1958, she fell while walking across a dance floor, sustaining a brain concussion which rendered her unconscious for 35 minutes and disabled her from working during the following three weeks. She returned to work on August 25 and worked until August 29 when she was laid off as above stated.

The referee found that the employee suffered personal injury on August 27, 1958, arising out of and in the course of her employment; that as a result of said personal injury she became temporarily and totally disabled on September 23, 1958, and continued to be so disabled for a period of 7 weeks, through November 10, 1958; that she was temporarily and partially disabled from November 11, 1958, for a period of 19 1/5 weeks; and that employee in her temporarily partially disabled condition was suffering a 25-percent general bodily disability. She was awarded certain medical and hospital expenses as well as compensation for the periods of disability.

The findings of the referee were affirmed by the commission.

■ The employer contends that the commission erred in finding as a basis for the award of compensation that the employee was totally disabled for 7 weeks and partially disabled for 19 1/5 weeks.

A review of the record satisfies us that there was evidence to justify the commission in affirming the findings and determination of the referee in connection with the periods of total and partial disability of the employee.

We have repeatedly said that it is the function of this court upon appeal from a decision of the Industrial Commission to determine whether the evidence is such that the commission might reasonably

have come to the conclusion which it did. If so, the findings will not be disturbed unless they are manifestly contrary to the evidence or unless consideration of the evidence and inferences permissible therefrom would clearly require reasonable minds to adopt a contrary conclusion. Torrey v. Midland Co-op. Inc. 253 Minn. 489, 93 N. W. (2d) 135; Sorensen v. P. H. Thompson & Son, 248 Minn. 280, 79 N. W. (2d) 673; Balow v. Kellogg Co-op. Creamery Assn. 248 Minn. 20, 78 N. W. (2d) 430; 21 Dunnell, Dig. (3 ed.) § 10426.

■ The employer also claims that the commission erred in not finding that employee's failure to secure other employment barred her right to recover temporary partial disability compensation. Minn. St. 176.101, subd. 2, provides:

"* * * If the employer does not furnish the worker with work which he can do in his temporary partially disabled condition and he is unable to procure such work with another employer, after reasonably diligent effort, the commission may fix a rate of compensation to be paid to the worker during the period of disability and unemployment, but not beyond 350 weeks; which shall be based upon the percentage of his general physical disability as determined from competent medical testimony adduced at a hearing before a referee, a commissioner, or the commission."

Employee testified that since she had been discharged from the hospital on October 2, 1958, she had not applied to the employer for work nor consulted with it about returning to work. She said, "No, I didn't feel that I was able to yet." Neither had she applied for any other job up to the time of the hearing on March 24, 1959. In that connection her doctor testified:

"Q. Doctor, did you prescribe any particular activity for Mrs. Luna, or give her any instructions as to what she could or could not do?

"A. Well, I told her not to work, of course, and I asked her to see me in the office about a week after discharge, or so, 10 days or so, something like that; and she came in on the 13th of October, 1958, the first time she was seen in the office.

"Q. Did you conduct an examination at that time?

"A. Yes, she again had tenderness over the lower back."

On November 10, 1958, her doctor told her she could return to work and that she could do any work not involving bending or heavy lifting.

She registered for employment and drew unemployment benefits for the week of September 1 to 6, 1958.

The commission found that in her temporarily partially disabled condition employee was suffering a 25-percent general bodily disability. In the light of the testimony of her doctor with reference to certain limitations as to work she could perform, we find no reversible error on the part of the commission in not finding employee barred from recovering for temporary partial disability under the facts and circumstances here.

Affirmed.