**MACMILLAN OIL COMPANY, Inc.,**
**Plaintiff,**

v.

**CITIES SERVICE OIL COMPANY,**
**Defendant.**

Civ. No. 7-1812-C-1.

United States District Court
S. D. Iowa,
Central Division.

Nov. 28, 1967.

Leo E. Gross and Keith McWilliams, Des Moines, Iowa, for plaintiff.

James E. Cooney, Des Moines, Iowa, for defendant.

## MEMORANDUM

STEPHENSON, Chief Judge.

Plaintiff, Macmillan Oil Company (Macmillan) brings this action alleging $68,691.20 in damages resulting from the breach by the defendant, Cities Service Oil Company (Cities Service), of a contract for the delivery of four million gallons of propane. Plaintiff alleges that a contract resulted from a series of three written communications between the parties. The defendant, while admitting the communications, denies that they constitute a contract. The case was tried to the Court sitting without a jury.

The evidence shows that the plaintiff, on April 15, 1965, sent a telegram to the defendant asking for quotations on propane for summer use (two million gallons) and winter use (four million gallons). On April 20, 1965, A. G. Welter, a duly authorized representative of the defendant's St. Paul, Minnesota office, responded, stating in part, "We wish to quote on the four million additional gallons for winter use on the basis of .0482 per gallon F.O.B. Des Moines." On April 26, 1967, plaintiff's President, Eugene Severs, responded in part that "We will accept your quotation for the 4,000,000 gallons for winter use." Plaintiff alleges that these communications amount to a contract and that the defendant has failed to deliver as provided by said contract. The defendant claims, however, that no contract was formed by the correspondence set out above since there was no "meeting of the minds" in respect to the essential element of place of delivery. The defendant offered evidence to the effect that Mr. Harlan Marchant, a sales representative of the defendant, called on Mr. Severs on May 13, 1965 to complete the necessary contract forms. Mr. Marchant testified that during the conversation that took place on that date it became apparent that there was

a misunderstanding as to the meaning of the term "F.O.B. Des Moines." Mr. Severs stated to Mr. Marchant that he thought "F.O.B. Des Moines" meant F.O.B. Macmillan's plant in Des Moines while Mr. Marchant stated that Cities Service had intended "F.O.B. Des Moines" to mean F.O.B. the Northern Propane pipeline terminal in Des Moines. The cost of delivery of the four million gallons of propane from the Northern Propane terminal to Macmillan's plant would be approximately $16,000. Mr. Marchant testified that he then suggested that an easy solution to this misunderstanding would be to re-quote the product at its base price at its source (Group 120, West Texas) so that there would be no misunderstanding as to who was to pay what part of the cost of delivery. Mr. Severs agreed and Mr. Marchant returned on June 11, 1965 with the base (Group 120, West Texas) price quotation. At that time Mr. Marchant advised Mr. Severs that the product would be held by Cities Service for Macmillan on this basis only until June 30. Mr. Severs stated that he wanted to examine the quotation and that this quotation was not extremely attractive in view of other competitive quotes, but that he would advise Cities Service of his decision. According to Mr. Mar-

chant's testimony, the product was held for Macmillan until June 30 when the quotation was withdrawn because of Macmillan's failure to respond in regard to it.

Mr. Severs testified briefly about these two meetings with Mr. Marchant stating that while he knew Mr. Marchant thought there was some disagreement over the meaning of "F.O.B. Des Moines," he has always thought F.O.B. Des Moines meant F.O.B. the Macmillan plant in Des Moines.

In this case it appears to the Court that throughout the time involved the plaintiff and the defendant each placed a different and distinct meaning on the term "F.O.B. Des Moines" and that until the May 13, 1967 meeting between Mr. Marchant and Mr. Severs neither party knew or had reason to know of the others understanding of the term. It further appears that both the plaintiff and the defendant were reasonable in understanding the term as they did.[1] The Court finds that there was no meeting of the minds and no mutual assent to the terms of a contract between the plaintiff and the defendant prior to the May 13, 1967 meeting between Mr. Marchant and Mr. Severs and, therefore, no contract between the parties.[2] See Corbin, Con-

---

1. The plaintiff argues that the defendant's interpretation of "F.O.B. Des Moines" as meaning the Northern Propane terminal in Des Moines is not reasonable. The Northern Propane pipeline is not connected to the MAPCO storage facility in Conway, Kansas (to which one-half of the 4,000,000 gallons of propane were to be delivered) and that particular propane could not, therefore, be delivered by the Northern Propane Pipeline to the Des Moines terminal. However, it is a common practice in the industry to trade or buy and sell propane between the Mid-America Pipeline (which runs to MAPCO facility at Conway, Kansas and has a terminal at Ogden, Iowa) and the Northern Propane Pipeline running to Des Moines. It was not unreasonable therefore for the defendant to interpret "F.O.B. Des Moines" as meaning delivery to the Northern Propane Terminal in Des Moines, particularly when the plaintiff's original telegram requesting bids stated

that 2 million gallons would be consigned to MAPCO storage "and the balance for Mid-America or Northern Propane Pipeline delivery" and in the first sentence thereof asked for delivery of summer product from "Ogden or Des Moines *terminals*." (emphasis added)

2. The plaintiff cites Industrial Products Mfg. Co. v. Jewett Lumber Co., 185 F.2d 866 (8th Cir. 1950) for the proposition that a meeting of the intentions of the minds is not required if the parties agree on the actual wording of the terms of a contract. That case is, however, distinguishable on the grounds that in that case the defendant's offer to the plaintiff was open to only one reasonable interpretation by the plaintiff—the interpretation made by the plaintiff. Here, both Cities Service and Macmillan's interpretations were reasonable and neither party was aware of the others reasonable interpretation. See, Restatement, Contracts § 71(a), Comment a, illus. 1 (1932).

tracts §§ 104, 107 (1963); Restatement, Contracts § 71(a) & Comment (a), Illus-1 (1932). At the May 13th meeting the misunderstanding became apparent and the parties agreed to renegotiate the terms relative to the price and place of delivery. On June 11, 1967, the defendant made another quotation and notified the plaintiff that such quotation would be held open for acceptance by the plaintiff only until June 30, 1967. Defendant did not hear from the plaintiff by June 30, 1967 and, therefore, no contract was ever made on the basis of this second quotation.

After reviewing all of the evidence in the case and reviewing the transcript of the testimony offered at the trial of the cause, the Court finds that there was never a contract between the plaintiff and the defendant as alleged in the complaint.

It is ordered that judgment be entered in favor of the defendant with costs assessed to the plaintiff.